JOURNAL CO. v. FEDERAL RADIO COMMISSION.

Nos. 5095, 5163, 5268, 5269.

Court of Appeals of District of Columbia.

Argued Feb. 5, 1931.

Decided March 2, 1931.

Motion for Specific Directions in Mandate, etc., Denied March 21, 1931.

Louis G. Caldwell and Elisha Hanson, both of Washington, D. C., for appellant in all the cases.

Paul D. Spearman, Arthur W. Scharfeld, Thad H. Brown, and D. M. Patrick, all of Washington, D. C., for appellee in No. 5095.

Thad H. Brown, A. W. Scharfeld, and D. M. Patrick, all of Washington, D. C., for appellee in No. 5163.

Thad H. Brown, D. M. Patrick, Ben S. Fisher, and A. W. Scharfeld, all of Washington, D. C., for appellee in Nos. 5268 and 5269.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice.

Appeals from decisions of the Federal Radio Commission.

Appellant, a Wisconsin corporation, is the publisher of the Milwaukee Journal, a leading newspaper in Wisconsin. It is the owner and operator of broadcasting station WTMJ at Milwaukee, which operates full time on a frequency of 620 kc., with authorized use of 1,000 watts power nighttime, and 2,500 watts daytime. This station and its predecessors in interest have been operating since 1922, under licenses from the Secretary of Commerce and later under licenses from the Radio Commission. The station represents an investment of over $300,000. More than $160,000 has been expended for major station equipment alone. The total gross cost of operating the station is approximately $300,000 per annum, the greater portion of which being for program expenses. It has 48 full-time employees, including an operating staff of 10 skillful technicians, a musical director who devotes all his time to the station's programs, an organist, and a permanent 16-piece orchestra. The pay roll for the year 1929 was $122,796.62.

The evidence clearly establishes (indeed, there is no suggestion to the contrary) that appellant's equipment is modern and satisfactory in every way and that its service has been of a very superior character. Prior to the decisions complained of, its normal and effective service area covered Wisconsin, most of Michigan, portions of Minnesota, Iowa, Illinois, and Indiana, and reached a population of approximately 3,500,000 persons.

On November 11, 1928, when appellant was assigned its present frequency and power (620 kc., with 1,000 watts nighttime and 2,500 watts daytime power), the following stations were assigned the same frequency: Station WLBZ, Dover-Foxcroft, Me., with 250 watts nighttime and 500 watts daytime power; WDAE, Tampa, Fla., and WDBO, Orlando, Fla., dividing time, with 1,000 watts power; KFAD, Phœnix, Ariz., with 500 watts power; and KGW, Portland, Or., with 1,000 watts power. The use of this frequency by the other·stations named, owing to the limited power and the location of those stations, did not materially affect the efficiency or restrict the area of service of appellant's station. In reliance upon the conditions thus created and existing, appellant materially improved its equipment and increased its weekly outlay for programs.

Early in April, 1929, appellant learned that station WLBZ (Me.) had applied for an increase of evening power from 250 to 500 watts. The commission's chief engineer wrote appellant that he had opposed the increase because he "did not want the possibility of this station causing a heterodyne in the service area of WTMJ," and inquired as to appellant's views. On April 22, 1929, appellant replied that it was convinced that an increase of WLBZ's power would cause serious heterodyne interference, and appellant therefore protested against the granting of the application on the ground that it would "unduly restrict the service area of WTMJ and damage the one good regional channel which the state of Wisconsin has." Later appellant wrote the commissioner from the Fourth Zone protesting against the granting of any application for privileges on 620 kc. without hearing, and particularly asking to be heard with reference to the application of WLBZ. On August 24, 1929, appellant again wrote the commission regarding a hearing, and the commission replied that the application of WLBZ was to be scheduled for hearing "if the applicant requests a hearing." On October 22, 1929, without notice or opportunity for hearing to appellant, the commission granted the application of WLBZ and authorized the use of 500 watts nighttime power "for remainder of license period provided no interference arises." Appellant learned of this through the press, filed a formal protest, and requested that before the

license should be renewed appellant be given an opportunity to be heard. On October 28, 1929, appellant filed with the commission a formal petition under oath asking that WLBZ's application for renewal with increased power be either denied or, if not denied, designated for hearing. In this petition appellant represented that the increase of power was causing interference in the area served by appellant's station and constituted a radical reduction of its service area. The commission took no action on this petition.

During the summer of 1929, appellant learned that the commission was considering a shift in the Florida broadcasting stations assigned to 620 kc., and by letter of July 29, 1929, to the commission, requested that "before any change is made in the Florida stations, WTMJ be given an opportunity to make the necessary investigation and to be heard." On or about October 23, 1929, without giving appellant any notice or opportunity for hearing, a shift was made in the Florida stations, under which WDAE, at Tampa, was taken off 620 kc. and WFLA-WSUN, at Clearwater, Fla., was assigned to that channel, with an evening power of 1,000 watts and daytime power of 2,500 watts. On November 15, 1929, WFLA-WSUN commenced operation on 620 kc. Almost immediately, in thousands of letters and telephone calls from listeners throughout Wisconsin and surrounding states, complaint was made to appellant of the resulting interference. Thereupon, appellant sent skilled observers throughout the state, into Iowa and Northern Illinois. The evidence adduced by appellant overwhelmingly establishes that the simultaneous evening operation of station WFLA-WSUN has resulted in almost ruinous interference, and reduced appellant's service area to a radius of approximately 20 miles from the transmitter.

On November 11, 1929, appellant noted its appeal to this court in No. 5095. This appeal was from a decision of the commission rendered October 25, 1929, on appellant's application for a renewal of its license. It is conceded that the commission renewed the license in its former terms, but it is contended that by an increase in power to another station already assigned to the channel, the commission had in effect refused appellant's application for renewal. Section 16 of the Radio Act of 1927 (44 Stat. 1162, 1169, U. S. C. Supp. 3, tit. 47, § 96 [47 USCA § 96]) authorized appeals as follows: "Any applicant for a construction permit, for a station license, or for the renewal or modification of an existing station license *whose application is refused by the licensing authority * * *;* and any licensee whose license is revoked by the commission. * * *" Appellant was prejudiced, not by a refusal to renew its application, but by the commission's action with respect to other stations. Under the Act of 1927 no appeal was allowed in such circumstances. Recognizing this apparent defect in the statute, Congress in the Act of July 1, 1930 (46 Stat. 844 [47 USCA § 96], amending section 16 of the 1927 Act, provided for appeals by "any other person, firm, or corporation aggrieved or whose interests are adversely affected by any decision of the commission granting or refusing any such application or by any decision of the commission revoking, modifying, or suspending an existing station license." It results that the appeal in No. 5095 must be dismissed.

We have determined that radio transmission, being a form of interstate commerce, is subject to regulation. Technical Radio Lab. v. Fed. Radio Comm., 59 App. D. C. 125, 36 F.(2d) 111, 66 A. L. R. 1355; City of New York v. Fed. Radio Comm., 59 App. D. C. 129, 36 F.(2d) 115; Chicago Fed. of Labor v. Fed. Radio Comm., 59 App. D. C. 333, 41 F.(2d) 422; KFKB Broadcasting Ass'n, Inc., v. Fed. Radio Comm., 60 App. D. C. 79, 47 F.(2d) 670, decided this term. The purpose of this regulation obviously is to prevent chaos and to insure satisfactory service. The installation and maintenance of broadcasting stations involve a very considerable expense. Where a broadcasting station has been constructed and maintained in good faith, it is in the interests of the public and common justice to the owner of the station that its status should not be injuriously affected, except for compelling reasons. Chicago Fed. of Labor v. Fed. Radio Comm., 59 App. D. C. 333, 41 F.(2d) 422. Unless such a policy is maintained, the public will not receive the character of service which we are convinced the Radio Act was intended to insure. No station that has been operated in good faith should be subjected to a change of frequency or power or to a reduction of its normal and established service area, except for compelling reasons.

After the commission had increased the power of the Maine station and shifted the Florida stations, appellant, apparently being doubtful of its right of appeal in No. 5095, filed its application in No. 5163 seeking a modification of its existing license so as to permit the operation of its station with 5,000 watts power, full time, on the same frequency, 620 kc. This application was re-

fused, the commission being of the view that to increase the power of appellant's station from its then assignment of 1,000 watts to 5,000 watts would ruin reception of all the other stations on the frequency. As already observed, appellant's station had already suffered similar harm by the action of the commission with respect to such other stations on the same frequency; moreover, this action was taken without notice to appellant.

Appeals in Nos. 5268 and 5269 were taken after the effective date of the amendment of July 1, 1930 (46 Stat. 844 [47 USCA § 96]), and involved the action of the commission in renewing the license of WFLA-WSUN, Clearwater, Fla., and the action of the commission in renewing the license of WLBZ, Bangor, Me. In each instance, as already noted, the action of the commission was taken without notice to appellant, and greatly to its prejudice.

██ In our view, it clearly appears that appellant is entitled to some form of relief. The commission was in error as a matter of law in increasing the power of the Maine station and shifting the Florida stations without notice to appellant and an opportunity for appellant to be heard. Courier-Journal Co. v. Fed. Radio Comm., 60 App. D. C. 33, 46 F.(2d) 614, decided this term. The finding of the commission in No. 5163 that there are "four stations besides appellant's assigned to the frequency of 620 kilocycles, whose geographical separation permits simultaneous operation without intolerable interference" is "manifestly against the evidence." Ansley v. Fed. Radio Comm., 60 App. D. C. 19, 46 F.(2d) 600, 601, decided this term; KFKB Broadcasting Ass'n, Inc., v. Fed. Radio Comm., 60 App. D. C. 79, 47 F.(2d) 670, decided this term. Theory must give way to fact. Recognizing that the commission is better equipped than this court to work out an equitable solution of the problem, we are reluctant to direct the particular form of relief. In our view, the interests of justice will be subserved by a reversal of the decisions in Nos. 5163, 5268, and 5269, with directions to the commission to afford appellant, after notice and opportunity to be heard, such relief as will measurably re-establish appellant in the position occupied by it prior to the acts complained of.

No. 5095 dismissed.

Nos. 5163, 5268, 5269, reversed.