**WOODMEN OF THE WORLD LIFE INS. SOC. v. FEDERAL COMMUNICATIONS COMMISSION (WZKO, Inc., Intervener). No. 7208.**

United States Court of Appeals for the District of Columbia.

Decided April 17, 1939.

Rehearing Denied May 18, 1939.

Paul M. Segal, of Washington, D. C., for appellant.

Hampson Gary, Gen. Counsel, William H. Bauer, Andrew G. Haley, and Fanney Neyman, all of Washington, D. C., for Federal Communications Commission.

Horace L. Lohnes and H. L. McCormick, both of Washington, D. C., for WKZO, Inc., intervener.

Before GRONER, C. J., and STEPHENS and EDGERTON, JJ.

GRONER, C. J.

Appellant (WOW) owns a radio broadcasting station in Omaha, Nebraska, operating with 1,000 w. power during evening hours. WKZO, Incorporated, intervener, is the owner of a station in Kalamazoo, Michigan. Both stations operate on the frequency of 590 kc. The distance between Kalamazoo and Omaha is 545 miles. On February 26, 1934, WKZO asked leave of the Communications Commission to move its transmitter site; to change its equipment and power; and to change its hours of operation from daytime to unlimited time. The Commission granted the application without a hearing. [1] Three days later it reconsidered its action and ordered the application set for hearing and gave notice thereof to all interested parties, including appellant. One of the issues to be heard and determined was whether interference would result to WOW from the granting of the application. The hearing was had before an examiner in September, 1934. [2] In October the examiner recommended that WKZO's application be granted. The Commission heard argument in November, 1934, and in February, 1936, approved the examiner's report and granted the application subject to Rules 131-132. [3] Appellant moved for reconsideration, and the Commission vacated its order and remanded WKZO's application for further hearing. Notice was given to all interested parties, including WOW, and a further hearing was held before an examiner, who again recommended that the application be granted. WOW's request for oral argument on its exceptions to the examiner's report was granted, and the case was heard by the Commission in February, 1937, and in April, 1937, the Commission for a third time grant-

---

[1] Sec. 309(a), Communications Act of 1934, 47 U.S.C.A. § 309(a).

[2] Appellant about this time asked the Commission to increase its nighttime power from 1,000 w. to 5,000 w. The Commission took no action on this application, doubtless because its Rule 120 prohibited the granting of power in excess of 1,000 w. on the regional frequency in use by appellant's station.

[3] Rule 131. (a) All applicants for new, additional, or different broadcast facilities and all licensees requesting authority to move the location of the station shall specify a radiating system the efficiency of which complies with the requirements of good engineering practice for the class and power of the station.

(b) The Commission will publish from time to time specifications deemed necessary to meet the requirements of good engineering practice.

(c) No broadcast station licensee shall change the physical height of the transmitting antenna, or supporting structures, or make any changes in the radiating system which will measurably alter the radiation patterns except upon written application to and authority from the Commission.

\* \* \* \* \* \* \*

Rule 132. (a) The transmitter proper and associated transmitting equipment of each broadcast station shall be designed, constructed and operated in accordance with good engineering practice in all phases not otherwise specifically included in these regulations.

\* \* \* \* \* \* \*

(c) The station equipment shall be so operated, tuned, and adjusted that emissions are not radiated outside the authorized band which cause or are capable of causing interference to the communications of other stations. The spurious emissions, including radio frequency harmonics and audio frequency harmonics, shall be maintained at as low a level as required by good engineering practice. The program distortion, audio frequency range, carrier hum, noise level, and other essential phases of the operation which control the external effects shall at all times conform to the requirements of good engineering practice.

ed the application, conditioned upon compliance by intervener with Rule 131 and the Commission's approval of the antenna installation. Appellant asked for rehearing, which in June, 1938, was denied, and this appeal taken.

Rule 131, adopted in 1935 after the first hearing on intervener's application, was intended to require the most efficient use of the facilities authorized by any licenses or permits granted thereafter. Whereas the original plans for WKZO's new transmitter called for 130-foot towers, the rule and the Commission's engineering standards called for towers 257 feet high, [4] which would emit a more powerful signal with the use of 250 w. allowed by the permit. Appellant contends the more efficient antenna, even with the directional characteristics, will cause objectionable interference to its station.

In the statement of facts and grounds for decision, the Commission says that intervener has shown that it is legally and technically qualified to operate the station with the power asked for; that intervener intends to construct an antenna so as to fully comply with the requirements of Rule 131; and that the grant is contingent upon compliance therewith; that the present service is not satisfactory to the people of Kalamazoo, but under the improved conditions it will be; that Kalamazoo has not hitherto received primary service at night, and that this fact alone shows an important public need for the granting of WKZO's application. The Commission also found that, notwithstanding Kalamazoo is only 545 miles from Omaha, no objectionable interference to the service of WOW would result from the grant to WKZO because of the characteristics of the proposed WKZO directive antenna, and on this basis the license was granted. WOW now appeals from this decision, first, on the ground that it constitutes a departure from the Commission's usual allocation practice, which means that the Commission has in this instance reduced the distance between two stations on the same frequency from 640 to 545 miles; [5] second, that the evidence submitted does not justify the conclusion that interference between the two stations will be avoided by the use by WKZO of a directional antenna elevated as required by the Commission's order; and, third, that, WKZO having applied for a license based upon an antenna 130 feet high and WOW having intervened and insisted that such an antenna would violate the provisions of Rule 131, the issue before the Commission was confined to the granting or rejecting of the application on the basis of the proposed antenna.

Undoubtedly, the Act contemplates that whenever the Commission is asked to allow an increase in the power of an existing station, so as to create the possibility of interference with another station on the same frequency, the latter must be given an opportunity to be heard. [6] After the first hearing, the Commission granted a permit inconsistent with the application, so as to require towers almost twice as high as those considered in the expert testimony presented on the issue of interference at that time. This should not have been done, but that permit was subsequently revoked and a new hearing ordered at which WOW was given notice and opportunity to meet the issue arising from 257-foot towers required by the new engineering standards then in effect. WOW was, therefore, not ultimately deprived of a fair hearing. If, considered in this view, it appears that the grant to WKZO will not result in objectionable interference to WOW, the latter is not an aggrieved person entitled to appeal under Sec. 402(b) of the Act. [7]

WOW, however, insists that, though the Commission has frequently recognized that its mileage-separation standards should be preserved in order to prevent interference between stations on the same frequency, it has failed to apply these standards in the instant case. But the Commission explains

---

[4] See First Annual Report of the Federal Communications Commission, (1936) pp. 28-29.

[5] See Seventh Annual Report of the Federal Radio Commission, (1933) p. 21.

[6] See Journal Co. v. Radio Com'n, 60 App.D.C. 92, 48 F.2d 461.

[7] 47 U.S.C.A. § 402(b): "An appeal may be taken, in the manner hereinafter provided, from decisions of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases:

"(1) By any applicant for a construction permit for a radio station, or for a radio station license, or for renewal of an existing radio station license, or for modification of an existing radio station license, whose application is refused by the Commission.

"(2) By any other person aggrieved or whose interests are adversely affected by any decision of the Commission granting or refusing any such application. * * * * * * *"

this apparent inconsistency in its findings of fact. It says that the radio art is developing; that conditions of yesterday are overcome today; and that among these developments is the directional antenna; that its use accomplishes two objects: concentration of the station's signal in areas desired to be served and limitation of the signal in other areas so as not to cause interference with other stations. We shall not follow this argument through its technical details. It is enough to say that there is substantial evidence in the record to show that by the use of the directional antenna, elevated as required by the Commission's rule, the station to be established by WKZO will be operated in such a way as to restrict the radiation in the direction of Omaha and eliminate any possibility of interference with WOW. The grant to WKZO is made conditional upon compliance of its equipment with this standard; and we have no manner of doubt that if, after erection and proper test by the Commission itself, it should be shown the expected objective has not been realized, the Commission will either withhold final approval or see to it that such changes are made as shall be necessary to accomplish the result. The grant, subject to its approval, is a sufficient guaranty that this will be done.

Commander Craven, an engineer of distinction in the radio field and now a member of the Commission, after describing in detail the plans and specifications for the building of the antenna to be used by WKZO—the purpose of which was to project the electrical energy north and south and suppress it to the west in the direction of WOW—stated that in his opinion there was no probability of objectionable interference from WKZO to the good-service area of WOW during the daytime or the nighttime. There was other like expert evidence and the approval of the Commission's engineer. He stated specifically that the directional antenna would protect WOW even with increased efficiency. The evidence in opposition was, as we read it, purposely confined to showing that absolute protection to WOW would not be obtained if the antenna was designed and built as proposed in the original application; and this, too, with due notice of the Commission's stated purpose not to grant the application except subject to its Rule 131.

We have, therefore, a case in which the Commission after five years of study and investigation, and after having twice granted and twice revoked the permit, set the application down for final hearing to be considered on the condition that the applicant would agree that in the event the grant was made the transmitting equipment should be designed and constructed in accordance with the Commission's specifications as required by Commission's new Rule 131. These conditions were accepted by WKZO, and appellant was forehanded with knowledge that the grant, if made, would be made on specifications different from those set out in the original application. With notice of the changed specifications, it not only failed to offer any evidence showing interference with its station, but on the cross-examination of its own witnesses objected to evidence showing that under these changed conditions there would be none. The whole course of the hearing indicates that appellant was afforded opportunity to show that interference would result, but preferred instead to rest its case upon a wholly technical objection based on procedure. To approve its position in this respect, would involve denial to the city of Kalamazoo of night radio service on a record which preponderatingly shows that this can be had without resulting in objectionable interference to WOW or any other station.

In these circumstances, we think it is of no consequence that the Commission failed to require the applicant to change its specifications to conform to the new rule. It is sufficient that with notice of the condition on which the grant would be made, if made at all, WKZO persisted in its application and that the evidence subsequently taken was based upon conditions which would obtain with an antenna constructed in accordance with the rule. Of all this WOW had due notice, but in spite of substantial evidence that no damage would ensue, failed to show the contrary. It is, therefore, not a person "aggrieved or whose interests are adversely affected" by the Commission's decision. Intermountain Broadcasting Corp. v. Federal Communications Commission, 68 App.D.C. 119, 94 F.2d 244; Pulitzer Publishing Co. v. Federal Communications Commission, 68 App.D.C. 124, 94 F.2d 249; Pittsburgh Radio Supply House v. Federal Communications Commission, 69 App.D.C. 24, 98 F.2d 303.

On the whole case, we cannot resist the conclusion that WOW's anxiety is due not so much to the present danger of interference, but rather the danger which might result in the event the Commission should hereafter revoke its existing rule limiting the power of regional stations on its chan-

nel. However commendable its prevision in this respect, it may not be permitted to override the right of Kalamazoo to radio service or the established right of WKZO to furnish it.

Appeal dismissed.