362 F.2d 946
 124 U.S.App.D.C. 116
 NATIONAL BROADCASTING CO., Inc., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, Boise Valley
Broadcasters, Inc., Intervenor.
GEM STATE BROADCASTING CORPORATION, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, Boise Valley
Broadcasters, Inc., Intervenor.
 Nos. 19523, 19524.
 United States Court of Appeals District of Columbia Circuit.
 Argued Jan. 20, 1966.
Decided May 26, 1966.
 
 Mr. Denis G. McInerney, New York City, with whom Messrs. Arthur J. Murphy, Jr., New York City, and Howard Monderer, Washington, D.C., were on the brief, for appellant in No. 19,523.
 Mr. William J. Potts, Jr., Washington, D.C., with whom Mr. Andrew G. Haley, Washington, D.C., was on the brief, for appellant in No. 19,524.
 Mr. Ronald A. Siegel, Counsel, Federal Communications Commission, with whom Messrs. Henry Geller, General Counsel, and John H. Conlin, Associate General Counsel, Federal Communications Commission, were on the brief for appellee. Mrs. Lenore G. Ehrig, Counsel, Federal Communications Commission, also entered an appearance for appellee.
 Mr. Leon T. Knauer, Washington, D.C., with whom Mr. Glen A. Wilkinson, Washington, D.C., was on the brief, for intervenor.
 Before WILBUR K. MILLER, Senior Circuit Judge, FAHY and TAMM, Circuit judges.
 TAMM, Circuit Judge:
 
 
 1
 The problems presented by these appeals have risen as a result of a broadcaster's attempt to give practical implementation to the Federal Communications Commission's 1961 'clear channel' decision, Clear Channel Broadcasting In The Standard Broadcast Band, 21 Pike & Fischer, R.R. 1802 (1961), reconsideration denied, 24 Pike & Fischer, R.R. 1595 (1962), wherein it determined that the public interest would be better served by more extensive utilization of the nation's clear channels.[1] This court had occasion in Goodwill Stations, Inc. v. FCC, 117 U.S.App.D.C. 64, 325 F.2d 637 (1963), in a somewhat different context, to examine at length the history, purpose, and correctness of the clear channel proceedings and decision. The subjects therein canvassed will be considered here only insofar as is necessary to an understanding of our present problem and decision.
 
 I.
 EARLIER RELATED PROCEEDINGS
 
 2
 The clear channel proceedings-- rule-making proceedings to determine whether and in what manner it would serve the public interest to amend the Commission's rules governing clear channel allocations-- were instituted in 1945 to consider the question of whether valuable 'spectrum space' was being wasted because of the clear channel policy of permitting only one station to operate at night on each of the twenty-five clear channels made available for standard broadcasting. The primary purpose of the proceedings was to explore possible ways to extend broadcast service to socalled 'white areas'-- areas which receive no primary interference free groundwave service.[2] The extent of the needful areas was well stated in the Commission's clear channel report in the following words:
 
 
 3
 'The extent of land area and population receiving no nighttime groundwave service from any stations (includes) more than half of the total land area of the United States and perhaps as many as 25,000,000 people principally in northern New England, the more mountainous regions of the Middle Atlantic states, much of the South, the northernmost part of the Great Lakes area, within the Great Plains and the mountainous areas of the West, and in Alaska. * * *' Clear Channel Broadcasting In The Standard Broadcast Band, 21 Pike & Fischer, R.R. 1802, 1806 (1961).
 
 
 4
 A fundamental conflict developed during the proceedings between those who advocated that the Commission should authorize the existing clear channel stations to operate at a power in excess of the 50 kilowatt limit imposed on such stations (up to as much as 750 kilowatts, Goodwill Stations, supra, 325 F.2d at 644), thereby increasing their range of effective service, and those who argued that the Commission should provide a first nighttime primary service to as much of the 'white area' as possible by authorizing additional unlimited time stations to operate on the frequencies previously reserved for the exclusive nighttime use of the existing clear channel stations. The Commission resolved this conflict, after sixteen years of on-and-off-again hearings in favor of the latter position, by authorizing the assignment of one Class II-A unlimited time station to each of eleven Class I-A channels, and one Class II unlimited time station on two other Class II-A channels.[3] The other twelve clear channels were left, for the time being, in status quo.
 
 II.
 THE PRESENT APPEALS
 
 5
 These appeals seek judicial review of one of the first attempts at practical implementation of the Commission's clear channel decision. Appellant, National Broadcasting Company (hereafter NBC), is the licensee of station WMAQ, a 50 kilowatt standard broadcast station located in Chicago, Illinois. WMAQ is a Class I-A station, operating on 670 kilocycles, which is one of the thirteen clear channels on which the Commission authorized the assignment of an unlimited time Class II-A station. Appellant Gem State Broadcasting Corporation (hereafter Gem State), an NBC affiliate in Boise, Idaho, is licensed by the Commission to operate station KGEM on 1140 kilocycles with power of tem kilowatts day and night (directional antenna) at Boise. Intervenor, Boise Valley Broadcasters, Inc., is the licensee of station KBOI, also located in Boise.
 
 
 6
 On October 29, 1962, KBOI filed an application for a construction permit to change frequency, increase power, and install a new directional antenna system for nighttime use. It requested permission to change frequency from 950 to 670 kilocycles (theretofore exclusively used by WMAQ) and to increase KBOI's authorized power from 5 kilowatts unlimited time to 50 kilowatts unlimited time. (Subsequently reduced by amendment to a request for 25 kilowatts, nighttime power). KBOI proposed to have its classification changed from a Class-III station operating on a regional channel to a Class II-A station in accordance with rules promulgated as a result of the clear channel proceedings.
 
 
 7
 Both NBC and Gem State opposed the KBOI application, NBC filing a 'petition to deny' pursuant to Section 309(d), (e) of the Communications Act of 1934, as amended, 47 U.S.C. 309(d), (e),[4] and Gem State filing an informal objection to the KBOI application pursuant to Section 1.587 of the Commission's rules, 47 C.F.R. 1.587. The Commission denied NBC's petition to deny on the ground that it did not have 'standing' as a party in interest within the meaning of Section 309 of the Communications Act; it also denied Gem State's informal objection on the ground that the contentions raised by Gem State were not supported by specific facts. Subsequent petitions for reconsideration were also denied. The Commission thus granted the application of Boise Valley Broadcasters for a construction permit to change the facilities of station KBOI as requested. In order to insure that no objectionable interference would ensue, the Commission conditioned the grant to KBOI by requiring that certain engineering safeguards be utilized.
 
 
 8
 In their appeals to this court, the parties have urged a number of arguments, all of which point from one direction or another to a conclusion that the Commission erred in failing to order an evidentiary hearing to consider their objections prior to the KBOI grant. Although we are of the opinion that the Commission was correct in determinint that further hearings were not required and that its decision must therefore be affirmed, in view of the importance of the issues involved to the parties and the general concern of broadcasters and the public with the subject matter of these cases, we will deal at some length with the competing arguments and the reasons for our determination that no further hearing was required. Undoubtedly the same or similar questions will arise in other cases before the Commission relating to clear channel extensions.
 
 III.
 
 9
 No. 19,523-- National Broadcasting Co.
 
 
 10
 Before the Commission, NBC based its claim of standing as a 'party in interest' within the meaning of Section 309 of the Communications Act on the ground that the grant of the KBOI application would cause objectionable interference within the lawfully protected 0.5 mv/m 50 per cent skywave contour of Station WMAQ.[5] It argued that because of such projected interference, it was entitled to a hearing under Section 309 and also under Section 316 of the Act, 47 U.S.C. 316,[6] because such objectionable interference would cause a 'modification' of WMAQ's license, which could not be done under decisions of this court and the Supreme Court without affording the licensee a hearing. It further alleged that the proposed KBOI directional antenna system could not be installed, adjusted and maintained in accordance with the specifications contained in the application because of the presence, in the vicinity of the antenna site, of public service power lines. NBC also argued that the Commission was required to consider frequency modulation (FM) service as well as standard (AM) service in determining whether the KBOI proposal conformed to the 25 per cent 'white area' requirement set forth in Section 73.24(i) of the Commission's rules, 47 C.F.R. 73.24(i). This rule provides that an increase in the facilities of an existing station will be allowed only after a satisfactory showing that
 
 
 11
 '25 per cent or more of the area or population within the nighttime interference-free contour of the proposed (Class II-A) station receives no nighttime interference-free primary service from another station.'
 
 
 12
 NBC further contended that KBOI's proposal failed to satisfy the terms of this rule because only 13 per cent of the area within the proposed interference-free nighttime contour would be without primary service from FM and AM broadcast stations, and that the grant of the application would not be in the public interest since the additional population to be served in the 'white area' would be very small. Finally, NBC contended that the KBOI proposal would not comply with Section 73.188(b) of the Commission's rules, 47 C.F.R. 73.188(b), which provides, inter alia, that transmitter sites should be located so that a 'minimum field intensity of 25 to 50 mv/m will be obtained over the business or factory areas of the city.'
 
 
 13
 In its February 25, 1965 unanimous decision dismissing NBC's petition to deny,[7] and its June 18, 1965 unanimous determination to deny reconsideration,[8] the Commission noted that it had fully considered the engineering information submitted by the parties and had found that, under the Commission's rules, the proposed operation of KBOI would not cause interference within the 0.5 mv/m 50 per cent skywave contour of WMAQ. The Commission thus found that NBC did not have standing as a 'party in interest' to bring the aforementioned contentions before the Commission. Nonetheless, the Commission, sua sponte, considered the merits of NBC's petition.
 
 
 14
 The Commission determined that there would not be any objectionable interference to WMAQ's Chicago-based signal by the Boise-based KBOI signal because the latter's antenna array 'can be adjusted and maintained in a manner to protect WMAQ and other existing stations.' In order to insure this result, the Commission further conditioned the KBOI grant by requiring that a 'properly designed phase monitor' be utilized and that a study should be made based upon anticipated variations in phase and magnitude of current in the individual towers, the results of which must be submitted with KBOI's license application.
 
 
 15
 The Commission further found that KBOI satisfied the 'white area' requirement of its rules because the operation would provide a first nighttime standard broadcast primary service to over 25 per cent of the area within KBOI's nighttime interference-free contour. It rejected any contention that FM service in the 'white areas' was a relevant consideration in allocating Class II-A stations, in view of the fact that FM service was not considered as a factor or as an alternative to AM service in determining adequacy of service in the clear channel proceedings. Finally, with respect to proposed coverage of the business and factory areas of Boise, the Commission determined that the coverage to be provided by the proposed KBOI operation was in 'substantial compliance' with the relevant Commission rule, 47 C.F.R. 73.188(b)(1).
 
 
 16
 Before us, NBC reiterates in substance all of the aforementioned arguments, with the additional arguments that its right to a hearing cannot be denied by the imposition of conditions in KBOI's construction permit and that the Commission did not comply with the requirements of Section 309, having failed to issue 'a concise statement of the reasons for denying the petition (to deny), which statement shall dispose of all substantial issues raised by the petition.' It urges us to reverse the Commission's decision on any or all of the bases argued and send the case back for an evidentiary hearing.
 
 
 17
 In reaching our decision to affirm the Commission, we have not been unmindful of the cardinal importance of the right to be heard where one's interests are acutely affected by the actions of an administrative agency. It is fundamentally abhorrent to our system of jurisprudence to deny a hearing to a litigant where justice and law require that a hearing be held. This court is certainly in agreement with this principle and recognizes it as one of the essential elements of our form of government. Having recognized the importance of the right to be heard, the question, for our purposes, becomes: Has NBC been accorded this right to the fullness of degree required by justice and the law? Determination of this question brings into sharp relief the relevance of the clear channel proceedings for this case.
 
 
 18
 The purpose of those lengthy proceedings was, generally, to determine the feasibility of the allocation of Class II-A channels, to give the licensees of the existing clear channel stations an opportunity to demonstrate possible interference, and to formulate standards and criteria to govern future allocations. NBC utilized the opportunity to be heard in those proceedings to the fullest extent possible. In face, NBC made, in a more general manner during those hearings, many of the arguments that it is now making in opposition to the grant of the KBOI application, and it did so with particular reference to station WMAQ. See Clear Channel Broadcasting in the Standard Broadcast Band, 24 Pike & Fischer, R.R. 1602-03 (1962); 47 C.F.R. 73.22(a). Although NBC took a position against the duplication of frequency 670 kilocycles in the clear channel proceedings, it recognized that the most favorable location of an Idaho station would be in the Boise area. (Comments of NBC, p. 12, filed April 1, 1960.)
 
 
 19
 NBC also participated extensively, by way of submitting evidence before the Commission, in the formulation of the engineering standards which ultimately were formalized into the Commission's rules governing allocation of the Class II-A stations. The clear channel proceeding evidently included much more exhaustive and extensive hearings than would be required under either Section 309 or 316 of the Communications Act, affording the parties thereto extensive opportunity to convince the Commission of the correctness of their views as to the engineering standards to be formulated.
 
 
 20
 Our basic question, then, becomes a relatively narrow one. Since the record discloses the fact that NBC had prior opportunity to be heard and fully utilized that opportunity, is the Commission, nevertheless, required to afford it another hearing relating to the specific factual situation created by the grant to KBOI where NBC alleges that operation of the KBOI station will cause objectionable electrical interference to its WMAQ signal within the meaning of that term under the Commission's rules; or, may the Commission, drawing upon its technical expertise and familiarity with the problem, determine, on the basis of the writen submissions of the parties, that there will be no objectionable interference? It is to be noted that such a hearing would be, for all intents and purposes, a rehearing upon virtually the same issues raised in the clear channel proceedings and would involve substantially the same evidence received by the Commission in those proceedings, although addressed now to a specific station application rather than to the general problem. NBC argues that it does have this right, both under Section 309 and Section 316. Counsel for the Commission, on the other hand, argues that given the peculiar circumstances surrounding this case, it was perfectly proper for the Commission to make a determination that no objectionable interference would ensue on the basis of the written submissions of the parties. Counsel argues that NBC, therefore, had neither standing under Section 309 nor a right to a hearing under Section 316, since the Commission had received, evaluated and ruled upon NBC's evidence in the clear channel hearings.
 
 
 21
 With respect first to the standing question, the classes of parties which have standing to file a petition to deny under the Federal Communications Act, as interpreted by decisions of this court and the Supreme Court, are closely circumscribed. These classes have been limited to those alleging some economic injury, e.g., FCC v. Sanders Bros. Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 689 (1940); those alleging electrical interference, NBC v. FCC (KOA), 76 U.S.App.D.C. 238, 132 F.2d 545 (1942), aff'd, 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374 (1943); and only recently were held by this court to include representatives of the public interest ('audience participation') in license renewal proceedings, Office of Communication of United Church of Christ et al. v. FCC, 123 U.S.App.D.C. 328, 359 F.2d 994, decided March 25, 1966.
 
 
 22
 NBC purports to base its standing as a party in interest under Section 309 on a claim of objectionable electrical interference which it says will occur as a result of KBOI's proposed operation. It thus must bring itself within the teaching of the KOA case, supra. In addition to KOA, NBC relies upon L. B. Wilson, Inc. v. FCC, 83 U.S.App.D.C. 176, 170 F.2d 793 (1948), both in support of its 'standing' under Section 309, and its right to an evidentiary hearing under Section 316. Since then both a standing finding under Section 309 and an indirect modification finding (tantamount to a standing finding) under Section 316 require objectionable electrical interference, the crucial question is whether such interference will occur as a result of the operation of station KBOI, or whether there is enough of a likelihood of such interference to require that an evidentiary hearing be held to give the parties a chance to submit technical data on the question.
 
 
 23
 Both the KOA and Wilson cases, supra, held in essence that the licensee of a station with a specified frequency and power has a right to participate in an evidentiary hearing under Section 316 where another broadcaster seeks a grant to operate on the same frequency (where the effect of the new grant may be to create objectionable electrical interference to the existing licensee) since this would bring about an 'indirect' modification of the existing licensee's license. If it were not for the fact in the present case of the prior related clear channel proceedings, KOA and Wilson would be controlling here and an evidentiary hearing would be required. But the present case stands on a different footing than either KOA or Wilson. In those cases the courts ordered hearings in order to provide the existing licensee with an opportunity to present arguments against the grant of a license to another broadcaster on the same frequency. Because of the possibility of electrical interference, the courts ordered the Commission to give the existing licensees an opportunity in an evidentiary hearing to prove that the interference would occur. Otherwise, the existing licensee's license might be indirectly modified by the grant of a license to another broadcaster on the same frequency. In the present case, however, the determination to add another station to the existing licensee's frequency (WMAQ) had previously been made in the clear channel proceeding, when it was determined that a Class II-A station could be licensed on 670 kilocycles and that such station should be situated, in order to provide maximum protection to station WMAQ, in Idaho. Risking repetition, we again point out that NBC had, and exercised, its hearing rights fully and completely in those proceedings. NBC's position in the present case is, therefore, basically different from that of the appellants in KOA and Wilson, where the appellants had been denied any opportunity to participate in a formal evidentiary hearing.
 
 
 24
 We agree with the Commission that, given the peculiar circumstances of this case, it was perfectly proper for it to decide the question of electrical interference (and thereby the question of standing under Section 309 and modification under Section 316) on the basis of the written submissions of the parties where it could determine from its own standards formulated in the clear channel proceedings that the alleged interference would not occur. We do not believe that the Commission should be required to write, as it were, on a tabula rasa in implementing its clear channel decision.[9] It does not have to remain oblivious to all that has gone before or ignore its own earlier actions and the evidence which justified those actions. Transcontinent Television Corp. v. FCC, 113 U.S.App.D.C. 384, 308 F.2d 339 (1962).
 
 
 25
 When viewed from this perspective, it is apparent that what NBC's argument really comes down to in this case is a dispute with the Commission over the Commission's application of the rules formulated in the clear channel proceedings to the specific factual situation in this case. Having failed to persuade the Commission of its argument in the clear channel proceeding, it is now asking this court to order the Commission to rehear, under the caption of the present case, much of the evidence heard, considered and at least partially rejected in those proceedings. It certainly goes without citation, if not without saying, that questions of such a highly technical and scientific nature must, after legal and required administrative proceedings, be left to administrative expertise. Congress has vested the Commission with primary jurisdiction to determine questions of this type, and we believe our judicial function is completed when our review establishes that the parties have received their full legal rights and the Commission's findings and rulings are neither arbitrary nor capricious.
 
 
 26
 The truth of this statement becomes abundantly clear upon examination of the specific contentions argued by NBC with respect to the Commission's failure to find electrical interference. NBC alleged, supporting its allegations with factual affidavits of qualified engineers, that the proposed operations of KBOI with 25 kilowatts would cause substantial interference within WMAQ's protected nighttime skywave contour. NBC's basic interference allegations were: (1) Taking into account only the standard deviations of antenna current ratios and operating power expressly permitted by the rules, KBOI would cause nighttime interference within WMAQ's protected contour to 129,728 people in an area of 37,956 square miles; (2) That KBOI's proposed directional antenna array would create a large lobe of high angle radiation of a type recognized in Section 73.185 of the Commission's rules as presenting an unusual problem in calculating anticipated interference. In support of its second interference allegation, NBC offered a 'Government-Industry Study' relating to actual performance of directional antennas and an independent engineering study consisting of actual measurements of a vertical radiation pattern similar to that which it alleged would be created by KBOI's proposed directional antenna array. NBC offered these studies to demonstrate that there would be even more interference than predictable under the Commission's rules. It argued that the Commission should consider NBC's studies as the 'best knowledge available,' since Section 73.185(h) of the Commission's rules provides that in cases of highangle radiation the method of calculating interference should not be restricted to that ordinarily applied, but rather each case should be considered on the basis of the 'best knowledge available.'
 
 
 27
 The Commission fully considered NBC's engineering information, evaluating it against its own technical data accumulated in the clear channel proceeding, which in turn had been tested in the crucible of lengthy hearings, supported by the experience and conclusions of the Commission's own objective experts. It concluded that no interference would be caused within WMAQ's protectee contour. The Commission also found, in the exercise of its expertise, that KBOI would be able to adjust and maintain its directional array as proposed in its application so as to avoid objectionable interference to WMAQ. With respect to the 'best knowledge available' argument, NBC appears to demand that the 'most recent' knowledge must be considered the 'best knowledge available.' However, the engineering studies which NBC urges on the Commission and this court are based upon essentially the same data and theories which the Commission had previously rejected, after hearing, during the clear channel proceeding. NBC had in fact asked the Commission during the clear channel proceedings to amend the specific rule here in question to include the procedures set forth in one of its studies, and the Commission afforded NBC a full hearing at that time upon this contention. In denying the amendment, the Commission stated that 'there is no assurance that any significant increases in the accuracy would result from the use of these theories.' Clear Channel Broadcasting In The Standard Broadcast Band, 24, Pike & Fischer, R.R. 1593, 1613, (1962). NBC had also been a participant in another rule-making proceeding wherein another of the theories which it here and now promotes as the 'best knowledge available' was rejected, after full hearing, by the Commission. Report and Order, 'Skywave Measurements,' 10 Pike & Fischer, R.R. 1642 (1954), reconsideration denied, Memorandum Opinion and Order 'Skywave Measurements,' 18 Pike & Fischer, R.R. 1683 (1959). In these circumstances, we believe that the Commission's determination of the interference question was reasonable and well within the boundary limits of its administrative discretion, especially when considered in light of the opportunities afforded NBC for full hearings in the clear channel proceedings. We therefore affirm the Commission's decision with respect to its determination that no objectionable interference will occur, and its corollary conclusions that NBC did not have standing as a party in interest under Section 309, and that there was no indirect modification of its license requiring an evidentiary hearing under Section 316.
 
 
 28
 Since it has been determined that NBC did not have standing as a party in interest under Section 309, technically NBC does not have standing to bring to this court the other arguments previously set out. However, since Gem State does have standing as a party alleging economic injury and it has raised essentially the same arguments, and since the Commission sua sponte considered these questions with respect to NBC, we will also deal with them here. We believe that by so doing we may eliminate delay and litigation in subsequent Class II-A channel grants.
 
 
 29
 First, the Commission was not required to 'issue a concise statement of the reasons for denying the petition' as to NBC, since the requirement extends only to those situations where the person filing the petition to deny is in fact a party in interest. In any event, in view of the fact that the previous clear channel proceedings and the reasoning prompting the decision therein are a matter of record, and the fact that the Commission did outline, however briefly, its reasons for rejecting NBC's contentions in the present case, we are satisfied that the Commission has fulfilled its statutory mandate on this point.
 
 
 30
 With respect to the question of the location of the transmitter site, the Commission determined, in accordance with its applicable rule, that KBOI's coverage was in 'substantial compliance' with the rule. Again, we believe that this question is one which essentially is for the expert administrative agency, and we can perceive no abuse of its discretion in its 'substantial compliance' determination. Cf. Hall v. FCC, 99 U.S.App.D.C. 86, 91 n. 5, 237 F.2d 567, 572 n. 5 (1956).
 
 
 31
 With respect to the question of service to 'white areas,' the Commission's rule on this question is expressly written in the alternative,supra, p. 952, so that an applicant satisfies the rule by meeting either the population or land area requirements. KBOI concedes that its proposed operation does not measure up to the population requirement; however, it does clearly meet the area requirement and thus complies with the rule. Moreover, we cannot say that the Commission's apparent anticipation of population increase in the covered ares is not within the circumference of its discretion.
 
 
 32
 We reach a like conclusion with respect to the Commission's determination not to consider FM as well as AM service in determining the 'white ares.' This determination is consistent with its announced purpose during the clear channel proceedings which led to the enactment of the present rule. Again, NBC had an opportunity, which it exercised at that time, to present its arguments on this question, and it is now simply asking us to adopt its view as opposed to that of the Commission. Without some showing by NBC that the Commission's decision on this point is arbitrary or unreasonable (Cf. Springfield T.V. Broadcasting v. FCC, 117 U.S.App.D.C. 214, 328 F.2d 186 (1964)), we have no authority to substitute our view for that of the Commission. This is especially so where, as here, large deference must be paid to the Commission's administrative expertise. James S. Rivers, Inc. (WJAZ) v. FCC, 122 U.S.App.D.C. 29, 351 F.2d 194 (1965).
 
 
 33
 With respect to NBC's argument that its right to a hearing cannot be denied by the Commission's imposition of conditions on KBOI's construction permit, we are of the view that the Commission could properly resolve the interference questions posed by NBC through imposition of conditions on the operations of KBOI. A conditioned grant is, we believe, an appropriate device to insure that no objectionable interference will be caused to an existing station. See Beaumont Broadcasting Corp. v. FCC, 91 U.S.App.D.C. 111, 202 F.2d 306 (1952).
 
 
 34
 We have paid great deference to the Commission's technical and engineering expertise in this case, because we believe the right resolution of the questions posed rests primarily and peculiarly within the province of the Commission, especially in view of the record in the clear channel proceeding. Further, we are impressed by the fact that NBC had extensive opportunity, evidently well utilized, to present its position to the Commission on the various questions considered herein during the clear channel proceedings. However, in spite of our affirmance of the Commission's decision that there will be no objectionable interference, we are aware that the possibility exists that experience may perhaps prove differently. The Commission has given us its expert opinion and judgment that it will not occur; we certainly cannot say that it will, given our limited experience in such matters. If such objectionable interference does become apparent at some future time when the results of tests under actual conditions are known, we assume that some course of remedial action will be undertaken by the Commission, either by way of further conditioning the operations of KBOI or by any alternative course of action which will eliminate the objectionable interference. Our adoption of this approach finds support in an earlier case in this court. In Woodmen of the World L. Ins. Soc. v. FCC, 70 U.S.App.D.C. 196, 105 F.2d 75, cert. denied, 308 U.S. 588, 60 S.Ct. 112, 84 L.Ed. 492 (1939), this court was faced with another 'possibility of interference' question where a licensee was seeking an increase in power on a frequency already utilized by an existing station. In affirming the determination of the Commission that there would be no interference, we nevertheless stated:
 
 
 35
 'We have no manner of doubt that if, after erection and proper test by the Commission itself, it should be shown the expected objective has not been realized, the Commission will either withhold final approval or see to it that such changes are made as shall be necessary to accomplish the result. The grant, subject to its approval, is a sufficient guaranty that this will be done.' 105 F.2d at 78.
 
 
 36
 We believe that experience must be the ultimate arbiter of the interference issue. We trust that the Commission will see to it that both the private interest of NBC, and more importantly, the public interest, are adequately protected.
 
 IV.
 No. 19,524-- GEM STATE
 
 37
 To the extent that KGEM's arguments repeat those made by NBC, we consider them to be answered by the foregoing. Gem State's posture in these proceedings is somewhat different from that of NBC, however. KGEM does have standing as a 'party in interest' because of its economic interest in competition for revenues and audiences with KBIO. FCC v. Sanders Bros. Radio Station, supra. In addition to the arguments already considered, KGEM argues that the Commission erred in its decision not to allow a hearing as to KGEM and by its failure to dispose of all substantial issues raised in the pleadings by way of a concise statement of its reasons for rejecting the petition.
 
 
 38
 The Commission determined that Gem State's pleadings did not contain specific facts to establish a prima facie case that a grant would result either in economic injury to KGEM or a degradation of service to the listening public. Specifically, it stated that
 
 
 39
 'no facts have been alleged to show that a grant will have an adverse impact on the public. Before the Commission will specify an economic issue, specific facts must be alleged to show that a grant would result in a loss or degradation of service to the public. Carroll Broadcasting Company v. F.C.C. (103 U.S.App.D.C. 346), 258 F.2d 440, 17 RR 2066 (1958); KGMO Radio-Television, Inc. v. F.C.C., 2 RR 2d 2057 (1964); Missouri-Illinois Broadcasting Co., 3 RR 2d 232 (1964). The contention raised by KGEM * * * is not supported by any specific facts, and therefore the request for the specification of an economic issue will be denied.' 4 R.R.2d at 554.
 
 
 40
 In its pleadings, Gem State stated that the effect of granting the KBOI application would be to cause an adverse economic effect on the operations of existing standard broadcast stations in Boise. In an affidavit of Gem State's president, it was stated that in 1961 'the six Boise stations had a combined financial loss of $102,849.' It also stated that if KBOI were able to divert national and regional advertising revenues away from KGEM, the latter station might have to curtail its specialized personnel and programs serving the Boise farm community.
 
 
 41
 With respect to the first point, no facts were presented indicating KGEM's losses, which may be either negligible or nonexistent. Certainly such a general and evasive allegation does not constitute a sufficient claim of economic loss to the pleader to require a hearing. See Southwestern Operating Co. v. FCC, 121 U.S.App.D.C. 137, 141-142, 351 F.2d 834, 838-839 (1965). Further, even assuming that there is some curtailment of service by KGEM to the farming community (something which must be left to conjecture, given KGEM's failure to give specifics concerning the nature of such curtailment), this will be more than offset, insofar as the listening public is concerned, by KBOI's projected increase in power and farm programming. Carroll Broadcasting Co. v. FCC, 103 U.S.App.D.C. 346, 350, 258 F.2d 440, 444 (1958).
 
 
 42
 Section 309 requires the Commission to hold an evidentiary hearing only where 'substantial and material questions of fact' are presented. In view of KGEM's failure to allege any specific facts relating to the above questions, the Commission's determination that no such substantial and material questions of fact were presented requiring resolution by way of evidentiary hearing was clearly a permissible exercise of discretion by the Commission. Finally, we believe that the Commission's opinions dealing with these questions constituted sufficient compliance with the statutory requirement that it issue a 'concise statement of its reasons for rejecting the petition.' The decision must therefore be
 
 FAHY, Circuit Judge (concurring specially):
 
 43
 I concur in the result.
 
 
 44
 The technical data before the Commission on the issue of standing of National Broadcasting Company, which I think was appropriate to be considered on that issue, support the Commission in denying standing to the Company. This I think an adequate basis for disposition of its appeal.
 
 
 
 [1]
 'A clear channel is one on which the dominant station or stations render service over wide areas, and which are cleared of objectionable interference within their primary service areas and over all or a substantial portion of their secondary service areas.' 47 C.F.R. 73.21(a)
 
 
 [2]
 'A standard broadcast station transmits two types of signals, a groundwave and a skywave signal. Primary service is provided by a station's groundwave signal. Under the Commission's rules, secondary service is provided at night by a station's skywave signal, i.e., the portion of the energy which travels upward and outward from the transmitter into the upper atmosphere (the ionosphere), from which it is reflected back to earth at night at distances much greater than the reach of the groundwave signals. Skywave signals are less constant in intensity than groundwave signals because of the continuous change in the characteristics of the ionosphere and other variables (e.g., latitude, time of year, sunspot activity, weather, atmospheric noise, and particularly the time of day) resulting in 'fading' from time to time in skywave reception. The only stations whose secondary service is recognized by the Commission are Class I stations. See Clear Channel Broadcasting in the Standard Broadcast Band, 31 F.C.C. 565, 657-68 (1961).' (Brief of Commission, p. 3, n. 1)
 
 
 [3]
 A Class I station is a dominant station operating on a clear channel with not less than 10 and not more than 50 kilowatts of power, designed to achieve relatively wide coverage, 47 C.F.R. 73.21(a)(1). A Class II-A station is an unlimited time secondary station operating on one of the clear channels listed in 47 C.F.R. 73.22 and assigned to a community within a state specified in the table contained in the section. A Class II-A station operates with a power of not less than 10 kilowatts nighttime or more than 50 kilowatts at any time. 47 C.F.R. 73.21(a)(2)(1)
 
 
 [4]
 Section 309(d)(1) Any party in interest may file with the Commission a petition to deny any application (whether as originally filed or as amended) to which subsection (b) of this section applies at any time prior to the day of Commission grant thereof without hearing or the day of formal designation thereof for hearing; except that with respect to any classification of applications, the Commission from time to time by rule may specify a shorter period (no less than thirty days following the issuance of public notice by the Commission of the acceptance for filing of such application or of any substantial amendment thereof), which shorter period shall be reasonably related to the time when the applications would normally be reached for processing. The petitioner shall serve a copy of such petition on the applicant. The petition shall contain specific allegations of fact sufficient to show that the petitioner is a party in interest and that a grant of the application would be prima facie inconsistent with subsection (a) of this section. Such allegations of fact shall, except for those of which official notice may be taken, be supported by affidavit of a person or persons with personal knowledge thereof. The applicant shall be given the opportunity to file a reply in which allegations of fact or denials thereof shall similarly be supported by affidavit
 (2) If the Commission finds on the basis of the application, the pleadings filed, or other matters which it may officially notice that there are no substantial and material questions of fact and that a grant of the application would be consistent with subsection (a) of this section, it shall make the grant, deny the petition, and issue a concise statement of the reasons for denying the petition, which statement shall dispose of all substantial issues raised by the petition. If a substantial and material question of fact is presented or if the Commission for any reason is unable to find that grant of the application would be consistent with subsection (a) of this section, it shall proceed as provided in subsection (e) of this section.
 Section 309(e) If, in the case of any application to which subsection (a) of this section applies, a substantial and material question of fact is presented or the Commission for any reason is unable to make the finding specified in such subsection, it shall formally designate the application for hearing on the ground or reasons then obtaining and shall forthwith notify the applicant and all other known parties in interest of such action and the grounds and reasons therefor, specifying with particularity the matters and things in issue but not including issues or requirements phrased generally. When the Commission has so designated an application for hearing the parties in interest, if any, who are not notified by the Commission of such action may acquire the status of a party to the proceeding thereon by filing a petition for intervention showing the basis for their interest at any time not less than ten days prior to the date of hearing. Any hearing subsequently held upon such application shall be a full hearing in which the applicant and all other parties in interest shall be permitted to participate. The burden of proceeding with the introduction of evidence and the burden of proof shall be upon the applicant, except that with respect to any issue presented by a petition to deny or a petition to enlarge the issues, such burdens shall be as determined by the Commission.
 
 
 [5]
 A Class I-A station (WMAQ) is afforded protection from a co-channel Class II-A station (KBOI) to its 0.1 mv/m contour, during the daytime and its 0.5 mv/m 50 per cent skywave contour during the nighttime. 47 C.F.R. 73.22(d)(1). The Class I-A nighttime protection is violated when the 0.025 mv/m 10 per cent contour of the Class II-A station on the same chanel overlaps the 0.5 mv/m 50 per cent contour of the Class I-A station. 47 C.F.R. 73.182(v)
 
 
 [6]
 Section 316. Modification by Commission of Construction Permits or Licenses
 (a) Any station license or construcstruction permit may be modified by the Commission either for a limited time or for the duration of the term thereof, if in the judgment of the Commission such action will promote the public interest, convenience, and necessity, or the provisions of this chapter or of any treaty ratified by the United States will be more fully complied with. No such order of modification shall become final until the holder of the license or permit shall have been notified in writing of the proposed action and the grounds and reasons therefor, and shall have been given reasonable opportunity, in no event less than thirty days, to show cause by public hearing, if requested, why such order of modification should not issue; Provided, That where safety of life or property is involved, the Commission may by order provide for a shorter period of notice.
 (b) In any case where a hearing is conducted pursuant to the provisions of this section, both the burden of proceeding with the introduction of evidence and the burden of proof shall be upon the Commission.
 
 
 [7]
 Boise Valley Broadcasters, Inc., 4 R.R.2d 559
 
 
 [8]
 Boise Valley Broadcasters, Inc., 5 R.R.2d 594
 
 
 [9]
 Even without benefit of a prior hearing, as is present here, this court stated in Wilson, in considering the possible propriety of denying a hearing altogether:
 'Nevertheless, we do not rule that the Commission may not, at the threshold of consideration of an issue of modification vel non of an outstanding license by the proposed operations of another station, treat the petition asserting such modification as if upon demurrer and thereby avoid the necessity of hearing proof of the truth of the allegations of 'objectionable interference' if as a matter of law they do not 'show' such interference within the Commission's rules and standards.' 170 F.2d at 804.
 See also Capitol Broadcasting Co. v. FCC, 116 U.S.App.D.C. 370, 324 F.2d 402 (1963); FCC v. WJR, the Goodwill Station, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949).